S03A0968. SMITH v. THE STATE.
(586 SE2d 639)

HUNSTEIN, Justice.

Ryan Alenn Smith was convicted of malice murder in the stabbing death of Bubak "Bobby" Soleimani. He appeals from the denial of his motion for new trial.[1] For the reasons that follow, we affirm.

1. The evidence adduced at trial authorized the jury to find that Smith and his co-worker, Cleopatra Mwangi, whom he had just met at his new job, went out after work and found themselves in Midtown Atlanta together around 3:00 a.m. trying to contact friends for a ride home. As they waited, the two teenagers saw the victim, a 31-year-old businessman who had just left a nightclub across the street, flash a large wad of bills as he purchased crack cocaine from a nearby drug dealer. Hoping to persuade the victim to get them inside the nightclub, Smith and Mwangi approached the victim. A homeless man also approached the victim and offered the use of his pipe in exchange for a share of the cocaine. The four then crossed to a parking lot and smoked the drugs the victim had purchased. Shortly after the victim received a call from his friend inside the nightclub, he left the others and began walking back. Mwangi observed Smith follow the victim and punch him in the mouth, knocking off the victim's glasses. The victim asked Smith "are you crazy? what are you doing?" then turned and ran. When Smith stumbled while in pursuit, the victim stopped and a verbal altercation ensued. Mwangi looked away but when she glanced back, she saw the victim on the ground and Smith punching him. Smith returned a few minutes later carrying a bloodied pocketknife. He told Mwangi that he thought he had "just killed somebody." Smith did not mention to Mwangi that the victim had attacked or threatened him and Mwangi did not see or hear the victim threaten Smith. Mwangi did not see any weapons on the victim and no weapon was recovered from the body or the crime scene, which testimony established was in Fulton County. The two teenagers left the area and Smith tossed his knife into some bushes. Based on a bystander's description, police stopped the teenagers a short distance

[1] The crime occurred on July 23, 1999. Smith was indicted August 24, 1999 in Fulton County. He was found guilty on April 29, 2002 and was sentenced that day to life in prison. His motion for new trial, filed May 28, 2002 and amended December 6, 2002 and supplemented January 16, 2003, was denied January 21, 2003. A notice of appeal was filed January 31, 2003. The appeal was docketed March 19, 2003 and was orally argued July 22, 2003.

away and Mwangi later led police to the knife. Expert testimony established that the blood on the knife came from the victim, who sustained three stab wounds to the chest and died from one that pierced his heart.

Smith introduced evidence that six years earlier the victim had been involved in a shoving incident with several college-aged men while drunk and that the victim had cocaine and alcohol in his system at the time of his death. Smith testified that the victim approached the two teenagers about smoking the cocaine then demanded payment from Smith afterwards; when Smith refused, the victim swung repeatedly at Smith then began to choke him, releasing his grip only after Smith stabbed the victim with the pocketknife.

On appeal, a conviction will be affirmed if this Court determines that, under the evidence, any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Based on our review of the record, we hold that the evidence at trial was sufficient to enable a rational trier of fact to find Smith guilty of malice murder beyond a reasonable doubt. Id. Smith "makes his arguments based not upon the sufficiency of the evidence, but upon the credibility of witnesses, which is not a question for the appellate court but is a question for the jury under proper instruction from the court. [Cits.]" *Roberts v. State*, 259 Ga. 441, 442 (1) (383 SE2d 872) (1989).

2. The grand jury indicted Smith on four charges: malice murder; felony murder; aggravated assault; and possession of a knife during commission of a felony. However, the face of the indictment signed by the grand jury foreperson incorrectly listed six offenses: the four crimes above plus armed robbery and an additional aggravated assault. The trial court entered an order dead-docketing the two extra offenses. That order was reflected on the face of the indictment, which was sent out without objection to the jury without any redaction or masking of the two dead-docketed crimes.

(a) Although Smith contends it was reversible error to try him on the defective indictment because it was not perfect in form, he failed to file a special demurrer before pleading not guilty to the indictment and thus waived his right to be tried on a perfect indictment. See *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d 38) (1977).

(b) Smith contends that the trial court's method of addressing the two extra crimes, by dead-docketing them, was error because no true bill had been returned by the grand jury regarding these crimes. Smith thus argues that the indictment was rendered void by the material subtraction made by the trial court. However, the trial court made no material subtraction to the indictment because the grand jury never indicted Smith on the two extra crimes. Their inclusion in the list on the face of the indictment was a mistake; the trial court

remedied that mistake to reflect that Smith was not being tried for those offenses. The two extra offenses were not charges for which Smith had to prepare a defense and the indictment returned was sufficient to place Smith on notice regarding the charges against him and to enable him to prepare his defense. See generally id. at 484. Because Smith has not demonstrated how he was harmed by the trial court's method of correcting the error on the face of the indictment,[2] we find no merit in this argument. See generally *Freeman v. State*, 268 Ga. 185 (3) (486 SE2d 348) (1997) (error must be harmful to be reversible).

(c) There is no question that the trial court erred by failing to redact or otherwise mask the indictment to remove from the jury's consideration any reference to the two additional charges, as well as the dead-docketing of those charges, before the indictment was submitted to the jury. See *Morrow v. State*, 229 Ga. App. 242 (4) (493 SE2d 616) (1997); *Tankersley v. State*, 155 Ga. App. 917 (5) (273 SE2d 862) (1980). However, the transcript reflects that Smith did not raise this ground when the indictment was sent out with the jury. Instead, he asserted it for the first time on motion for new trial. "[T]he rule generally is that 'if defendant's counsel wish such [other charges] concealed from the jury, a request to this effect should be made at the proper time before the jury retire to their room.' [Cit.]" *Page v. State*, 120 Ga. App. 709-710 (1) (172 SE2d 207) (1969). See Daniel, Georgia Criminal Trial Practice, 2001 ed., § 24-18. Where there is no request to conceal the improper information on the indictment, this Court has held it was not error to permit the indictment with the improper information written thereon to go to the jury room with the jury. *Salem v. State*, 228 Ga. 186 (5) (184 SE2d 650) (1971).

3. In response to an outburst from the victim's sister, the trial court ordered a recess. In addition to the sister's outburst, defense counsel complained about matters that occurred in the courtroom that were not reflected in the transcript, namely, crying by the victim's family during the medical examiner's testimony and muttered comments by a male spectator. The trial court thereafter conducted individual voir dire of the jury to determine whether they had been biased. The transcript reflects that all of the jurors indicated they would still be able to base their decision on the evidence. The trial court also barred the offending family member from the courtroom. Based on our review of the transcript[3] and the actions taken by the

---

[2] Nothing in this opinion should be read as approving the trial court's decision to remedy the error on the face of the indictment by dead-docketing the two uncharged crimes.

[3] Defense counsel later referred to the incident in closing argument:

We heard you when there was the outburst in the courtroom and y'all came back in and told us what was in your hearts and in your head. You told us it wouldn't affect

trial court, we find no abuse in the trial court's discretion in denying Smith's motion for a mistrial. See *Todd v. State*, 274 Ga. 98 (5) (549 SE2d 116) (2001).

4. Smith contends that the trial court abused its discretion by replacing a juror during deliberations with an alternate juror. See *Graham v. State*, 171 Ga. App. 242 (5) (319 SE2d 484) (1984) (excusal of juror and substitution of alternate are matters necessarily within discretion of the trial court). However, Smith repeatedly declined the trial court's invitation to except to the manner in which the substitution was handled. Accordingly, any objection to the juror's departure and replacement with the alternate was waived. See *Cail v. Griffin*, 224 Ga. 431 (2) (162 SE2d 356) (1968); *Reid v. State*, 204 Ga. App. 358 (1) (419 SE2d 321) (1992).

5. The jury commenced deliberations on Friday, April 19, 2002. They deliberated the following Monday and on Tuesday morning the trial court gave them the *Allen*[4] charge. At the end of Tuesday they indicated they were making progress; however, juror Patterson was excused and on Wednesday was replaced by the alternate juror. The jury was then instructed to begin their deliberations anew. The reconstituted jury deliberated three days before returning its verdict on Monday, April 29. Throughout this time the jurors repeatedly responded to court inquiry by indicating that they were making progress and seemed unanimously willing to continue; the trial court also clarified to the jurors that they were not required "to stay and sweat it out until a decision is made."

Based on the unusual length of deliberations, Smith moved for a mistrial asserting that any verdict returned would be the result of "wearing down" the hold-out jurors. The trial court denied the motion, noting that the length could also indicate "that this is the most conscientious jury that we've ever seen in our careers." The general rule in this State is that "a motion for mistrial based on the length of the jury's deliberation is within the sound discretion of the trial court. [Cits.]" *Cofield v. State*, 247 Ga. 98, 113 (8) (274 SE2d 530) (1981). In light of the events as set forth in the transcript, we find no abuse of the trial court's discretion in denying the mistrial motion.

6. We find no abuse in the trial court's discretion in excluding cross-examination of witness Jarrin regarding pre-trial comments Jarrin had made to defense counsel regarding the victim's use of heroin. Jarrin testified at trial that he and the victim went to the nightclub; that the victim excused himself saying he intended to return personal items to his car; that he called the victim on his cell phone

---

you. It affected me, affected me big time. I've been doing this 20 years and never seen such a thing, but it didn't seem to affect you.

[4] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

and the victim said he was coming right back. The witness, who remained in the club, never spoke to or saw the victim alive thereafter. Because Jarrin's pre-trial comments were not relevant to the issues being tried and were not inconsistent with his in-court testimony regarding the victim's use of crack cocaine, there was no error in excluding them. See generally *Duckworth v. State*, 268 Ga. 566, 567 (1) (492 SE2d 201) (1997).

7. The transcript does not support Smith's contention that he was improperly limited in his ability to cross examine and impeach witness Mwangi. Even though Mwangi's immigration status was irrelevant to any material issue in Smith's case, *Sandoval v. State*, 264 Ga. 199 (2) (a) (442 SE2d 746) (1994), the trial court allowed defense counsel to question Mwangi about her immigration status and her lack of candor regarding her drug use when filling out an INS form a year after the murder.[5] Because Smith failed to lay a proper foundation for the INS form, the trial court did not abuse its discretion by refusing to admit it into evidence. See generally *Jones v. Scarborough*, 194 Ga. App. 468 (2) (390 SE2d 674) (1990).

8. (a) We find no error in the trial court's refusal to strike for cause two jurors whose voir dire testimony reflects that their opinions were not so fixed and definite that they would not be able to set their opinions aside and decide the case based upon the evidence. See *Miller v. State*, 275 Ga. 730 (5) (571 SE2d 788) (2002).

(b) The trial court did not err by striking for cause a juror who stated that he had a burglary and two drug-related convictions and who could not say whether or not his civil rights had been restored. OCGA § 15-12-163 (b) (5).

9. Based on our review of the trial court's charge as a whole, see generally *Drake v. State*, 272 Ga. 797 (3) (537 SE2d 336) (2000), we find no merit in Smith's claims of impropriety in the jury instructions. The trial court's charge[6] properly described the burden of proof and reasonable doubt and correctly instructed the jury regarding intent and conflicts in the testimony. Although Smith enumerates as error the failure of the trial court to instruct the jury on several issues, he failed to request those charges in writing. Because the omission of those charges was not erroneous as a matter of law, in that the omission did not fail to provide the jury with the proper guidelines for determining guilt or innocence, compare *Johnson v. State*, 253 Ga. 37 (315 SE2d 871) (1984), any error is waived. See id. at 38. Finally, the *Allen* charge given by the trial court was approved in *Spaulding v. State*, 232 Ga. 411 (4) (207 SE2d 43) (1974); its use

---

[5] Mwangi declined to answer and invoked her right against self-incrimination.

[6] The charges were taken virtually verbatim from the suggested pattern jury instructions promulgated by the Council of Superior Court Judges.

here was not error. See *Burchette v. State*, 260 Ga. App. 739 (3) (580 SE2d 609) (2003).

10. After Mwangi testified for two days, the trial court excused her subject to recall regarding her INS form, see Division 6, supra, and allowed her to remain in the courtroom after Smith informed the court that any further cross-examination of the witness would be limited to that issue. Smith made no objection to the trial court's ruling. Smith later questioned Mwangi on different matters that had been the subject of testimony of other witnesses while she sat in the courtroom. He now contends that the rule of sequestration was violated and the violation constituted reversible error. Smith cannot complain of error his own behavior induced. See generally *Scott v. State*, 274 Ga. 476 (5) (554 SE2d 488) (2001).

11. (a) Contrary to Smith's contentions, our review of the transcript reveals that the prosecutor did not improperly vouch for Mwangi's credibility. See *Davis v. State*, 266 Ga. 801 (5) (471 SE2d 191) (1996). Smith did not object and thus waived any error as to two other alleged acts of misconduct during trial. See *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997) (Georgia "has long followed the contemporaneous objection rule, which provides that counsel must make a proper objection on the record at the earliest possible time to preserve for review the point of error"). As to the final alleged act of misconduct, even assuming, arguendo, that a prosecutor has some limited duty to act upon realizing a victim's family or friends intend to disrupt court proceedings, the transcript does not support Smith's contention that the prosecutor in this case acted inappropriately.

(b) No objection was made to the alleged improprieties in the State's closing argument and accordingly the matter is waived. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

12. Any evidence about the victim's drug use that Smith could have gleaned from the victim's urine, hair and blood samples, which were destroyed by the State, would have been merely cumulative of evidence adduced at trial that the victim took drugs the night of the crimes and had cocaine metabolites in his system. Accordingly, the evidence was not critical and its destruction was harmless. See *Rogers v. State*, 224 Ga. App. 359 (2) (480 SE2d 368) (1997).

13. The transcript does not support Smith's contention that a police officer improperly commented on Smith's right to remain silent and right to an attorney. See *Lewis v. State*, 172 Ga. App. 68 (1) (321 SE2d 812) (1984) (no error when witness is prevented from giving improper testimony).

14. The transcript does not reflect that Smith objected at closing argument or during trial to the matters he now contends constituted the State's improper shifting of the burden of proof to Smith. Thus,

this issue was not preserved for appeal. See *Mullins v. State*, supra, 270 Ga. at 450 (2) (failure to object to improper argument results in waiver); *Earnest v. State*, 262 Ga. 494, 495 (422 SE2d 188) (1992) (alleged errors not raised at trial will not be heard on appeal).

15. Likewise, the transcript reflects no objection by Smith to evidence regarding the victim's family. Id.

16. The trial court never ruled upon Smith's request for a jury view. In order to make an issue the basis for review, counsel must, at the time it arises "invoke some ruling . . . respecting it . . . . A party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later. [Cits.]" *Joyner v. State*, 208 Ga. 435, 438 (67 SE2d 221) (1951). This enumeration is without merit.

17. Georgia does not recognize the cumulative error rule. *Jones v. State*, 273 Ga. 231 (17) (539 SE2d 154) (2000).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003 —
RECONSIDERATION DENIED OCTOBER 17, 2003.

*Steven H. Sadow, Cook & Connelly, Bobby Lee Cook*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Anna E. Green, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.